284 F.3d 281
 Catherine GONZALEZ, Individually and as Parent Guardian and Next Friend of the Minor Child Kiana Rios, Plaintiff, Appellant,
v.
UNITED STATES of America, Defendant, Appellee.
Lawrence General Hospital, Swadesh Mullick, Michael Robbins, Laurel A. Ruzicka, Steven D. Stovitz, Blaire Roberts, and Rosamunde Ebacher, Defendants.
 No. 00-2352.
 United States Court of Appeals, First Circuit.
 Heard December 4, 2001.
 Decided April 1, 2002.
 As Corrected May 8, 2002.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Sidney Gorovitz, with whom Perlman, Gorovitz & Borten was on brief for appellant.
 Gina Y. Walcott-Torres, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief for appellee.
 Before BOUDIN, Chief Judge, BOWNES, Senior Circuit Judge, and LIPEZ, Circuit Judge.
 BOWNES, Senior Circuit Judge.
 
 
 1
 This is a medical malpractice case brought by plaintiff-appellant, Catherine Gonzalez, individually and on behalf of her daughter, Kiana Rios, who was born with various health problems on October 27, 1995. The district court dismissed the suit against the defendant-appellee United States because the plaintiff failed to file a timely administrative claim as required pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2401(b).
 
 
 2
 The plaintiff presents three arguments on appeal. First, she argues that under the discovery rule, she timely filed her claim because her cause of action accrued in May 1998, not February or March 1996 at the latest, as the district court had determined.[1] Second, the plaintiff contends that the statute of limitations should be equitably tolled because she was unaware that the defendants were for purposes of the FTCA federal employees, 42 U.S.C. § 223(a), (g), necessitating her compliance with the two-year statute of limitations under federal law. Finally, she argues the doctrine of fraudulent concealment tolls the statute of limitations because she was unable to obtain important medical documents and information until after the litigation began. We reject each of these contentions and affirm the district court.
 
 I. BACKGROUND
 A. Facts
 
 3
 In early 1995, the plaintiff became pregnant and sought pre-natal care at Greater Lawrence Family Health Center ("GLFHC") in Lawrence, Massachusetts. She was assigned to nurse practitioner and midwife, Rosamunde Ebacher, C.N.M. ("Ebacher"), who informed her that delivery would take place at Lawrence General Hospital ("LGH"). At approximately 11:00 a.m. on October 26, 1995, the plaintiff arrived at LGH for delivery. Throughout the day, resident physicians Laurel A. Ruzicka, M.D. ("Ruzicka"), and Steven D. Stovitz, M.D. ("Stovitz") and the attending physician, Blaire Roberts, M.D. ("Roberts"), monitored the plaintiff in the Obstetric Department. These doctors were all employees of GLFHC, although the plaintiff was not aware of this at the time of her admission.
 
 
 4
 During labor and delivery, the plaintiff maintained an increased temperature, for which she was given an antibiotic; expelled a greenish fluid and thick material from her vagina; and experienced heart rate decelerations, for which she received oxygen. At 5:47 a.m. on October 27, approximately eighteen hours after her admission to the hospital and after a long and difficult delivery, the plaintiff gave birth to Kiana Rios. Ruzicka and Roberts delivered the baby, who was flaccid and blue and required ventilation for three minutes before she could breathe on her own. Later that day, the baby exhibited stiffening of her upper extremities. Approximately two hours after delivery, the plaintiff learned Kiana was suffering from seizures. Early the next morning (October 28, 1995), Kiana was transported to Children's Hospital Medical Center ("Children's Hospital") with a diagnosis of seizures, secondary to perinatal asphyxia. Prior to Kiana's transfer, the plaintiff saw her three times. During the visits, she observed that the baby was screaming, shaking, pale, wearing an oxygen hood, and in an incubator. Also prior to the transfer, the plaintiff signed three consent forms, which indicated she consented generally to the transfer, understood that the baby was being transferred because she was in serious condition and needed emergency treatment, and that the plaintiff had received a doctor's explanation that the baby might be experiencing seizures and stiffening. The baby remained at Children's Hospital until November 6, 1995.
 
 
 5
 On December 15, 1995, the plaintiff attended her first post-partum appointment with Ebacher. Here, the plaintiff recounted the baby's medical history and asked Ebacher why Kiana was sick. Ebacher replied that she did not know why and that the baby was stressed. The plaintiff also alleges that she asked this question not only of the four medical providers present on the day of Kiana's birth and named in the original suit, but also of Kiana's subsequent treating physicians.[2] None of them could advise her as to what had occurred. After her birth, the baby was hospitalized on numerous occasions and also developed sight and hearing defects. During Kiana's first or second admission to Children's Hospital, the plaintiff was informed that the baby suffered from hypoxic-ischemic encephalopathy, or lack of oxygen to the brain. The plaintiff also received an October 14, 1996 report from Children's Hospital, detailing the baby's birth and subsequent medical history.
 
 
 6
 In February or March 1996 — approximately four months after Kiana's birth — the plaintiff consulted an attorney because, according to her deposition testimony, "I wanted some answers.... I wanted to know what happened to my daughter because I kept asking the doctors and no one ever told me." In the fall of 1996, prior to Kiana's first birthday, the plaintiff terminated her attorney-client relationship with her first attorney and retained her present counsel. The plaintiff testified in her deposition that she was aware that her present counsel retained a medical expert "to see if anything further went on than genetics or just a will of God." In May 1998, the plaintiff received an expert's written report, which linked Kiana's injuries to the plaintiff's labor and delivery at LGH. Approximately five months later — on October 23, 1998 — the plaintiff filed this suit.
 
 
 7
 More than six months later, on April 20, 1999, the plaintiff's attorney requested Kiana's fetal heart monitoring strips from Lawrence General Hospital.[3] Correspondence about these strips continued until May 19, 1999. Although the hospital had not provided the strips with the other materials it had previously provided to the plaintiff, it sent her the strips by the end of May 1999. These strips were also referenced in Kiana's medical records, which had been in the plaintiff's possession as of at least February or March 1996.
 
 
 8
 At all relevant times, the Greater Lawrence Family Health Center, where Ruzicka, Stovitz, Roberts, and Ebacher worked, was a federally supported health center, pursuant to the Federally Supported Health Centers Assistance Act of 1992 (Pub.L. 102-501, 106 Stat.1992) and 42 U.S.C. § 233(a), and all its employees were deemed federal employees for the purposes of the FTCA. Neither the plaintiff nor her attorneys ever inquired as to whether Ruzicka, Stovitz, Roberts, or Ebacher were federal employees, nor did the medical practitioners identify themselves as such to the plaintiff.
 
 B. Procedural History
 
 9
 On October 23, 1998, the plaintiff filed a medical malpractice suit against, inter alia, Ruzicka, Stovitz, Roberts, and Ebacher in Essex Superior Court in Massachusetts.[4] In early April 1999, the United States, acting on behalf of these defendants, removed the case to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 2679(d)(2) (the "Westfall Act").[5] On May 7, 1999, the United States filed a motion to dismiss under Fed.R.Civ.P. 12(b)(1) for the plaintiff's failure to exhaust administrative remedies pursuant to the FTCA, 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), and 2671, et seq. The plaintiff filed her opposition to the motion, along with affidavits of the plaintiff and Attorney Peter J. Kajko ("Kajko"),[6] on July 6, 1999, and the United States filed a reply brief on August 6, 1999.
 
 
 10
 On December 14, 1999, the district court heard oral argument on the motion to dismiss and ordered the parties to conduct limited discovery on the issue of what the plaintiff knew or should have known of the alleged negligence. In response, both sides submitted supplemental memoranda and the plaintiff also filed exhibits and deposition transcripts of, inter alia, the four named medical providers. On July 17, 2000, the district court granted the motion to dismiss all claims against the United States and remanded the claims against the non-federal medical providers to state court. The plaintiff appeals the dismissal of her claims against the United States under the FTCA. As of the time of this appeal, the plaintiff had not filed an administrative claim with the appropriate federal agency.[7]
 
 II. DISCUSSION
 
 11
 This court uses different standards of review in evaluating a district court's dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), depending on the circumstances. See Valentín v. Hosp. Bella Vista, 254 F.3d 358, 362-63 (1st Cir.2001). Here, however, the plaintiff's challenge focuses on pure (or nearly pure) questions of law, and thus engenders de novo review. See id.
 
 
 12
 We first address the plaintiff's contention that the district court should have reviewed the defendant's Rule 12(b)(1) motion to dismiss pursuant to the standards applicable to a Rule 56(c) motion for summary judgment, and that we should do the same. She argues the standard of review for a motion for summary judgment is appropriate because (1) the question of jurisdiction depends on resolution of factual issues that go to the merits of the case and (2) the court considered materials beyond the pleadings.
 
 
 13
 First, the plaintiff baldly asserts, with no further argument or supporting case law, that the question of jurisdiction depends on the resolution of factual matters that go to the merits of the case. A Rule 12(b)(1) motion is sometimes transformed into a Rule 56 motion where jurisdictional issues cannot be separated from the merits of the case. See Valentín, 254 F.3d at 363 & n. 3. A jurisdictional issue is intertwined with the merits where the court's subject matter jurisdiction depends upon the statute that governs the substantive claims in the case. McLellan Highway Corp. v. United States, 95 F.Supp.2d 1, 5-6 (D.Mass.2000).
 
 
 14
 The jurisdictional issue in this case is a statute of limitations question—whether the plaintiff timely filed her claim under the FTCA. While the FTCA also provides the basis for the cause of action here, it is clear that the facts relevant to the determination of subject matter jurisdiction do not go directly to the merits of the plaintiff's claim. That is, the determination of whether the claim is time-barred bears no relationship to whether the plaintiff can make out a showing of negligence on the merits of the case. See generally, Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1558 (9th Cir.1987). Accordingly, the 12(b)(1) motion should not be characterized as a motion for summary judgment on this ground.
 
 
 15
 Second, the plaintiff argues that because her opposition memorandum to the defendant's motion to dismiss included, and the court considered, the affidavits of the plaintiff and attorney Kajko, as well as deposition transcripts of the plaintiff, Ebacher, Roberts, Ruzicka, Stovitz, and Dr. Karen Barnett (a pediatrician not named in the suit), the defendant's motion to dismiss must be considered under the standards appropriate for a motion for summary judgment.
 
 
 16
 We reject this argument as well. The attachment of exhibits to a Rule 12(b)(1) motion does not convert it to a Rule 56 motion. While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion, such as the one in this case. Heinrich v. Sweet, 44 F.Supp.2d 408, 412 (D.Mass.1999); White v. Comm'r of Internal Revenue, 899 F.Supp. 767, 771 (D.Mass.1995) ("The Court can look beyond the pleadings — to affidavits and depositions — in order to determine jurisdiction.") (citing Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1363 (1990)). The plaintiff's argument relies on a Ninth Circuit decision, Ellis v. Cassidy, 625 F.2d 227, 229 (9th Cir.1980), which is inapplicable because it dealt with a 12(b)(6) motion, while this case involves a 12(b)(1) motion.
 
 
 17
 Further, the documents attached to both sides' motions and supplemental briefs were submitted and considered by the district court for the very purpose of determining the court's subject matter jurisdiction. The attachment of these documents does not convert the Rule 12(b)(1) motion to a Rule 56 motion.
 
 
 18
 
 Federal Tort Claims Act and the Discovery Rule
 
 
 
 19
 Pursuant to the FTCA, a tort claim against the United States is "forever barred" unless it is presented in writing to the appropriate federal agency within two years after the claim accrues. 28 U.S.C. § 2401(b).[8] Accordingly, it is well-settled that an FTCA claim must be dismissed if a plaintiff fails to file a timely administrative claim. See, e.g., United States v. Kubrick, 444 U.S. 111, 113, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); Attallah v. United States, 955 F.2d 776, 779 (1st Cir.1992); Gonzalez-Bernal v. United States, 907 F.2d 246, 248 (1st Cir.1990). This Court has repeatedly held that compliance with this statutory requirement is a jurisdictional prerequisite to suit that cannot be waived. See, e.g., Coska v. United States, 114 F.3d 319, 323 n. 8 (1st Cir.1997); Corte-Real v. United States, 949 F.2d 484, 485-86 (1st Cir.1991); Gonzalez-Bernal, 907 F.2d at 248.
 
 
 20
 The general rule is that a tort claim accrues at the time of the plaintiff's injury. Kubrick, 444 U.S. at 120, 100 S.Ct. 352; Attallah, 955 F.2d at 779. Under this rule, the plaintiff's claim accrued on October 27, 1995, the day of Kiana's birth. The plaintiff filed her state court claim on October 23, 1998, nearly three years later, and never filed an administrative claim. Thus, pursuant to the two-year statute of limitations, the claim is time-barred.
 
 
 21
 Under the well-established "discovery rule" exception to the rule articulated above, however, a claim accrues when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the factual basis for the cause of action. Kubrick, 444 U.S. at 121-24, 100 S.Ct. 352; Attallah, 955 F.2d at 780; Nicolazzo v. United States, 786 F.2d 454, 455 (1st Cir.1986); see also Fidler v. Eastman Kodak, 714 F.2d 192, 199 (1st Cir.1983) ("notice of likely cause is ordinarily enough to start the statute running"). The standard is an objective one; in order to toll the statute of limitations pursuant to the discovery rule, the factual basis for the cause of action must have been "inherently unknowable" at the time of injury. Attallah, 955 F.2d at 780. The factual basis for a cause of action is "inherently unknowable" if it is "incapable of detection by the wronged party through the exercise of reasonable diligence." Geo. Knight & Co. v. Watson Wyatt & Co., 170 F.3d 210, 213 (1st Cir.1999) (citation and internal quotations omitted).
 
 
 22
 Once a plaintiff knows of the injury and its probable cause, he/she bears the responsibility of inquiring among the medical and legal communities about whether he/she was wronged and should take legal action. Kubrick, 444 U.S. at 123, 100 S.Ct. 352. As the Supreme Court stated in Kubrick:
 
 
 23
 A plaintiff ... armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government.
 
 
 24
 Id.; see also Hau v. United States, 575 F.2d 1000, 1003 (1st Cir.1978) ("When the facts [become] so grave as to alert a reasonable person that there may have been negligence related to the treatment received, the statute of limitations [begins] to run against the appellant's cause of action") (citation and internal quotations omitted) (alterations in original); Cragin v. United States, 684 F.Supp. 746, 753 (D.Me. 1988), aff'd 873 F.2d 1433 (1st Cir.1989) ("after plaintiffs know of the injury at issue and its probable cause, they bear the responsibility of inquiring among the medical and legal communities whether the treatment they received was proper or warranted legal action"); Harrison v. United States, 708 F.2d 1023, 1027 (5th Cir.1983) (noting that the statute of limitations begins to run where the facts available to the plaintiff would lead a reasonable person to (1) conclude that a causal connection between the treatment and injury exists or (2) to seek professional advice and then conclude that such a connection exists). The plaintiff need not know either the full extent of the injury, Marrapese v. Rhode Island, 749 F.2d 934, 940 n. 10 (1st Cir.1984) (citation omitted), or that it was negligently inflicted, Kubrick, 444 U.S. at 124, 100 S.Ct. 352. If, however, a plaintiff's "blameless ignorance" prevents him or her from discovering the cause of action, the statute of limitations begins to run when the "factual predicate for a malpractice claim" becomes apparent. Nicolazzo, 786 F.2d at 456 (citation and internal quotations omitted); Kubrick, 444 U.S. at 120 n. 7, 100 S.Ct. 352; Urie v. Thompson, 337 U.S. at 163, 169-70, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949).
 
 
 25
 Further, the limitations period begins to run regardless of whether plaintiffs make inquiries, and regardless of whether they are correctly advised. Kubrick, 444 U.S. at 124, 100 S.Ct. 352. As the Supreme Court stated in Kubrick:
 
 
 26
 If there exists in the community a generally applicable standard of care with respect to the treatment of [the plaintiff's] ailment, we see no reason to suppose that competent advice would not be available to the plaintiff as to whether his treatment conformed to that standard. If advised that he has been wronged, he may promptly bring suit. If competently advised to the contrary, he may be dissuaded, as he should be, from pressing a baseless claim. Of course, he may be incompetently advised or the medical community may be divided on the crucial issue of negligence.... But however or even whether he is advised, the putative malpractice plaintiff must determine within the period of limitations whether to sue or not, which is precisely the judgment that other tort claimants must make. If he fails to bring suit because he is incompetently or mistakenly told that he does not have a case, we discern no sound reason for visiting the consequences of such error on the defendant by delaying the accrual of the claim until the plaintiff is otherwise informed or himself determines to bring suit, even though more than two years have passed from the plaintiff's discovery of the relevant facts about injury.
 
 
 27
 Id. at 123-24, 100 S.Ct. 352; see also Cragin, 684 F.Supp. at 754-55.
 
 
 28
 Under the discovery rule, the plaintiff argues that her claims did not accrue until May 1998, when she received the expert report that connected the baby's medical problems to her treatment at Lawrence General Hospital at the time of her birth. We reject this argument and find that her claim accrued no later than February or March 1996, when she retained her first lawyer.[9]
 
 
 29
 By October 28, 1995, the day after Kiana's birth, the plaintiff was aware of her difficult labor and delivery, had an opportunity to observe Kiana's condition, and was aware of the reasons for the baby's transfer to Children's Hospital. The plaintiff's repeated attempts to ask the doctors what was wrong with her baby further showed her awareness of not only the injuries but also their potential cause. No dispute exists that by October 28, 1995, the plaintiff was aware of the baby's various difficulties, including her lack of oxygen, seizures, paleness, stiffening, and screaming. The plaintiff had in her possession facts sufficient to alert a reasonable person that negligence may have occurred in the course of the baby's delivery and treatment at Lawrence General Hospital. Armed with this information, the plaintiff not only asked questions of the primary and subsequent treating doctors at both hospitals, but also retained not one, but two attorneys sequentially.
 
 
 30
 These facts indicate that the plaintiff was on notice of the likely cause of the baby's injuries by February or March 1996, at the latest, when she retained her first attorney. See Kay v. Johnson & Johnson, 722 F.Supp. 874, 881 (D.Mass. 1989), aff'd 902 F.2d 1 (1st Cir.1990) (holding that a plaintiff's claim for injuries arising out of her use of oral contraceptives was time-barred where the cause of action accrued, at the latest, when the plaintiff consulted her first lawyer, who evaluated and investigated the potential claim); Pitts v. Aerolite SPE Corp., 673 F.Supp. 1123, 1128 (D.Mass.1987), aff'd Cornell v. E.I. Du Pont de Nemours & Co., 841 F.2d 23 (1st Cir.1988) (holding that the plaintiffs were on notice of the likely causal connection between the formaldehyde foam insulation at issue and the family's illness where one plaintiff approached a physician and inquired about a possible connection, even though she neither received an answer nor investigated further). The plaintiff, through her attorneys, bore the responsibility of both inquiring among the medical and legal communities to determine whether they had an actionable claim and bringing any such claim within the statutory period.[10] At the latest, this two-year period ended in February or March 1998. Because the plaintiff filed this suit on October 23, 1998, it is time-barred.[11]
 
 
 Equitable Tolling
 
 
 31
 The plaintiff further argues that this court should equitably toll the statute of limitations because she did not know, and could not have known, that the defendants were federal employees. Without this knowledge, she was unaware that the FTCA's two-year statue of limitations applied to her case, and thought instead that she must file her claim within the three years allowed under Massachusetts law. Mass. Gen. Laws ch. 260, § 2A (2000). We reject this argument.
 
 
 32
 The doctrine of equitable tolling suspends the running of the statute of limitations if a plaintiff, in the exercise of reasonable diligence, could not have discovered information essential to the suit. Bernier v. Upjohn Co., 144 F.3d 178, 180 (1st Cir.1998) ("A party seeking to toll the statute must at the very least show that the information could not have been found by a timely diligent inquiry...."). Tolling is "appropriate only when the circumstances that cause a plaintiff to miss a filing deadline are out of his hands." Salois v. Dime Sav. Bank, FSB, 128 F.3d 20, 25 (1st Cir.1997) (citations and internal quotations omitted).
 
 
 33
 The plaintiff cannot make a showing of due diligence on this issue. No evidence has been presented that she or her attorneys made any inquiry whatsoever as to the status of the defendants as federal employees. The plaintiff does not allege that this information was hidden or concealed from her. Rather, she claims that she was blamelessly ignorant and had no way of discovering the defendants' status as federal employees. Although the plaintiff did not know the federal status of the defendants at the time of her treatment, she and her attorneys had two years to ascertain the legal status of the doctors and could easily have learned it. Instead, they simply assumed that this was a state case and failed to make any inquiries whatsoever to confirm their assumption.[12] This demonstrates a clear lack of due diligence on the part of the plaintiff and her attorneys. We hold that the district court properly rejected the plaintiff's claim that the statute of limitations should be tolled on the ground that the plaintiff was unaware of the defendants' status as federal employees.
 
 
 Fraudulent concealment
 
 
 34
 The plaintiff also asserts that the statue of limitations should be tolled under the doctrine of fraudulent concealment because she was unable to obtain important medical documents until after the litigation began. We reject this argument as well.
 
 
 35
 The doctrine of fraudulent concealment tolls the statute of limitations "where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part." Salois, 128 F.3d at 25 (citations and internal quotations omitted); Maggio v. Gerard Freezer & Ice Co., 824 F.2d 123, 127 (1st Cir.1987). We may toll the statute of limitations under this doctrine only where two conditions are met. First, the defendant raising the limitations defense must have engaged in fraud or deliberate concealment of material facts related to the wrongdoing. Second, the plaintiff must have failed to discover these facts within the normal limitations period despite his or her exercise of due diligence. Demars v. General Dynamics Corp., 779 F.2d 95, 97 (1st Cir.1985) (citations omitted); Salois, 128 F.3d at 26 ("Allegations of fraudulent concealment do not modify the requirement that plaintiffs must have exercised reasonable diligence."); Truck Drivers & Helpers Union, Local No. 170 v. NLRB, 993 F.2d 990, 998 (1st Cir.1993) ("Irrespective of the extent of the effort to conceal, the fraudulent concealment doctrine will not save a charging party who fails to exercise due diligence, and is thus charged with notice of a potential claim.").
 
 
 36
 The plaintiff claims that the defendants, who were in a fiduciary relationship with her because of their doctor-patient relationship, were either silent or evasive regarding the cause of the baby's injuries, and that the plaintiff reasonably relied on their responses. While silence may constitute fraudulent concealment where a person, such as a fiduciary, has a duty to disclose, Demars, 779 F.2d at 98, here the plaintiff merely alleges, without any factual support, that the medical personnel who treated her were in control of the information that would suggest a correlation between the baby's delivery and her injuries. Moreover, with the exception of Ebacher, whom she visited one time after Kiana's birth, the plaintiff had no further contact with Ruzicka, Stovitz, or Roberts after she left LGH. The plaintiff's conclusory allegations are insufficient for a finding that the defendants engaged in fraudulent concealment through silence or evasion. Finding no fraudulent concealment, we need not consider the reasonable diligence prong of the test.
 
 
 37
 The plaintiff also argues that LGH engaged in fraudulent concealment by intentionally withholding or concealing the baby's fetal heart monitoring strips until seven months after the beginning of the state court litigation.[13] She argues that these strips were essential for determining that the baby was suffering from distress during labor and that a caesarean-section was necessary. But, the plaintiff merely alleges, without any factual basis, that the defendants concealed these strips from her. The letters from her counsel to defense counsel demonstrate only that the hospital had not located the strips until May 1999. In fact, within a month of first requesting the strips, the plaintiff's attorney, in a letter dated May 19, 1999, thanked the defense for locating the strips and expressed his anticipation that he would receive them within a week, as the defendants had promised. The strips indeed arrived by the end of May 1999.
 
 
 38
 Further, even if the plaintiff could prove that the hospital engaged in fraudulent concealment of the strips, it is clear that she and her attorneys did not exercise reasonable diligence in attempting to locate the strips. The plaintiff had access to Kiana's medical records, which contain references to these strips, as early as February or March 1996, when she retained her first lawyer. Nevertheless, her attorney's initial letter to the defense regarding these strips was on April 20, 1999 — more than three years after the plaintiff retained her first attorney, almost six months after she filed her state court claim, and almost three and a half years after the baby's birth.
 
 
 39
 Because the plaintiff has failed to show any fraudulent concealment, the district court properly found this doctrine does not operate to toll the statute of limitations.
 
 
 40
 
 AFFIRMED.
 
 
 
 
 Notes:
 
 
 [1]
 The federal statute of limitations is two years; the plaintiff filed her claim on October 23, 1998
 
 
 [2]
 The plaintiff asked questions of Ruzicka, Stovitz, and Roberts when she was at LGH for delivery. With the exception of Ebacher, the plaintiff did not have further contact with the other defendants after she left LGH
 
 
 [3]
 These strips could indicate the existence and level of fetal distress during labor
 
 
 [4]
 The Complaint also named Swadesh Mullick, M.D. (an LGH doctor who authorized the administration of Pitocin to the plaintiff to help her labor along), Robbins and LGH. The United States represents Ruzicka, Stovitz, Roberts, and Ebacher, collectively. Mullick retained private counsel; defendants LGH and Robbins were dismissed by stipulation of the parties
 
 
 [5]
 Section 2679(d)(2) provides:
 Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States.... Such action or proceeding shall be deemed to be an action or proceeding brought against the United States ... and the United States shall be substituted as the party defendant.
 
 
 [6]
 Kajko was co-counsel for the plaintiff
 
 
 [7]
 The appropriate agency is the Department of Health and Human Services
 
 
 [8]
 28 U.S.C. § 2401(b) provides:
 A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.
 
 
 [9]
 Arguably, we need not apply the discovery rule at all, because the factual basis for the cause of action was not inherently unknowable at the time of the injury, that is, it was not incapable of detection by the plaintiff through the exercise of reasonable diligence. The claim, therefore, would have accrued on October 27, 1995, the day of Kiana's birth, when she sustained the injuries and the plaintiff was aware of the injuries
 
 
 [10]
 In addition, once the plaintiff was on notice of the injury and its potential cause, the limitations period began to run regardless of whether she had made inquiries, and continued to run even if she had been incorrectly advisedKubrick, 444 U.S. at 124, 100 S.Ct. 352.
 
 
 [11]
 The Savings Provision of the FTCA cannot resurrect the plaintiff's claim. This provision excuses a plaintiff's failure to exhaust administrative remedies where (1) the tort claim accrued within two years of the filing of the state court action and (2) the plaintiff presents the claim to the appropriate federal agency within sixty days after the dismissal of the action. 28 U.S.C. § 2679(d)(5). Because the plaintiff filed her claim on October 23, 1998, more than two years after its accrual in February or March 1996, at the latest, the district court properly found that the Savings Provision does not apply
 
 
 [12]
 As the Fourth Circuit stated in rejecting a plaintiff's argument that the statute of limitations under the FTCA should be tolled:
 While it is true that the employment status of the attending physicians was not made known to plaintiffs at the time treatment was given, it is also true that plaintiffs made no inquiry as to the physicians' employment status until [three years after the alleged negligence]. When asked, the government responded promptly to plaintiffs' request for this information. Unfortunately, such requests were not made until the statute of limitations had expired.... The facts indicate that plaintiffs failed to exercise due diligence. Indeed, there is nothing in the record to suggest that prior to [three years after the alleged negligence] plaintiffs' counsel made any effort to investigate the legally significant facts which plaintiffs contend would have been undiscoverable even if due diligence had been exercised.
 Gould v. U.S. Dep't of Health and Human Servs., 905 F.2d 738, 745 (4th Cir.1990); see also Wilson v. United States Gov't, 23 F.3d 559, 561-62 (1st Cir.1994) (finding the plaintiff did not exercise due diligence and rejecting his request to toll the statute of limitations where the plaintiff was unaware that the United States owned the ship at issue but could easily have determined this through "routine discovery").
 
 
 [13]
 LGH is no longer a party to this suit