Gisela **FAURA CIRINO**, et al. Plaintiffs

v.

**UNITED STATES of America** Defendant

No. CIV. 01–1912(SEC).

United States District Court, D. Puerto Rico.

June 27, 2002.

Ricardo Ruiz–Diaz, Ruiz & Reyees Law Offices, Fajardo, PR, Ramón L. Walker–Merino, San Juan, PR, for Plaintiffs.

Lisa E. Bathia–Gautier, U.S. Attorney's Office, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Before the Court is the United States of America's ("Defendant") motion to dismiss the complaint. (Docket # 11). Gisela Faura Cirino and Gregorio Fuentes Fuentes ("Plaintiffs") have filed an opposition to the motion to dismiss (Docket# 15), and Defendant has filed a reply (Docket# 18). After careful review of the arguments of counsel, the relevant law, and the record, the Court finds that Defendant's motion should be **DENIED.**

### Jurisdiction

The Court's subject matter jurisdiction is invoked pursuant to 28 U.S.C. § 1331

(federal question) as Plaintiffs bring a cause of action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2761, *et seq.* The parties do not dispute that this is the proper venue.

## Background

### 1. Factual Background

█ Plaintiffs assert a tort claim for wrongful death, utilizing Puerto Rico law.[1] Specifically, Plaintiffs allege that the medical treatment provided to their son/decedent Edison Fuentes Faura by Edwin Perez Perez, M.D., and the Concilio de Salud Integral de Loiza (CSILO)[2] on August 5, 1998, was below the applicable standard of care. Defendant asserts that Plaintiffs did not adequately exhaust the administrative remedies before filing the above-captioned matter, and as such, the Court lacks subject matter jurisdiction.

### 2. Procedural Background

This procedural background, which is not disputed by the parties, is critical to our analysis, and is set forth chronologically:

a. The factual scenario giving rise to this matter occurred on August 5, 1998.

b. On November 5, 1999, Plaintiffs filed a claim against CSILO, the Municipal Government of Loiza, the Commonwealth of Puerto Rico, and the University of Puerto Rico, Case No. FDP 1999–0702(407) in the Court of First Instance, Carolina Part. In that case, Plaintiffs asserted claims against all Defendants for professional negligence allegedly committed by employees of CSILO.

c. On April 27, 2000, CSILO moved to dismiss the complaint filed in the Commonwealth court because it is a federal institution that could only be sued under the Federal Tort Claims Act.

d. Upon this realization, Plaintiffs moved for a dismissal of that action on May 25, 2000.

e. Plaintiffs then filed an administrative claim with the Department of Health and Human Services on September 13, 2000, as a prerequisite to filing this suit.

f. On January 16, 2001, the Commonwealth court dismissed the claims against CSILO.

g. Plaintiffs filed the above-captioned matter on July 9, 2001.

---

1. Under the Federal Tort Claims Act, the law of the jurisdiction where the tortious act occurred is utilized. ·

2. The Department of Health and Human Services (HHS) has certified that CSILO and its employees were deemed employees of the Public Health Service at the time of the incident alleged in the complaint. That certification is final as to the question of whether CSILO and its physicians were federal employees pursuant to the Federally Supported Health Centers Assistance Act of 1992, 42 U.S.C. § 233(g) ("FSHCAA"). "[O]nce the Secretary [of HHS] makes a determination that an entity or an ... employee ... is deemed to be an employee of the Public Health Service for purposes of this section, the determination shall be final and binding upon the Secretary and the Attorney General and other parties to any civil action or proceeding." 42 U.S.C. § 233(g)(1)(F). Moreover, the United States Attorney General has certified that Dr. Edwin Perez Perez, Dr. Luis Ramirez, and CSILO, were deemed to have been acting within the course and scope of their employment with the Public Health Service, at all times material to the incident alleged in the complaint. Thus, Plaintiffs' claim against the United States of America under the FTCA is the exclusive remedy for the negligent or wrongful act or omission of any employee of the Government. 28 U.S.C. § 2679.

### Applicable Law/Analysis

#### 1. Motion to Dismiss Standard

Fed.R.Civ.P. 12(b)(1) permits a defendant to assert a claim that the Court lacks subject matter jurisdiction to entertain the action. As the First Circuit Court of Appeals has cogently stated, "federal courts are not at liberty to overlook limitations on their subject matter jurisdiction." *A.M. Francis v. Goodman*, 81 F.3d 5, 8 (1st Cir.1996). Thus, if the Court determines, as a threshold matter, that subject matter jurisdiction does not exist, it must dismiss the case and not make any determination on the merits of the same.

▆▆▆ The First Circuit has noted that rule 12(b)(1) "... is a large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction." *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 362–63 (1st Cir.2001). One type of challenge occurs when the defendant controverts "the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffering materials of evidentiary quality in support of their position." *Id.* This type of challenge (which is termed a "factual challenge"), unlike a motion for summary judgment, "permits (indeed, demands) differential factfinding. Thus, the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." *Id.* When the Court makes a determination on a factual challenge, it "enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction." *Id.*

▆▆▆ Another 12(b)(1) challenge "accepts the plaintiff's version of jurisdictionally-significant facts as true and addresses their sufficiency, thus requiring the court to assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction." *Id.* at 363 (citations omitted). In making this determination, the court is obliged to "credit the plaintiff's well pleaded factual allegations (usually taken from the complaint, but sometimes augmented by an explanatory affidavit or other repository of uncontested facts), draw all reasonable inferences from them in her favor, and dispose of the challenge accordingly." *Id.* (citations omitted). This type of challenge has been dubbed a "sufficiency challenge." In this case, Defendant presents a sufficiency challenge, and the Court will therefore, credit Plaintiffs' version of the procedural facts as set forth above.

#### 2. The Administrative Exhaustion Requirement of the FTCA

▆▆▆ The Federal Tort Claims Act provides that, "a tort claim against the United States is 'forever barred' unless it is presented within two years after the claim accrues." *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir.2002) (*citing* 28 U.S.C. § 2401(b)). Section 2401(b) provides that:

[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). It is thus clear that an "... FTCA claim must be dismissed if plaintiff fails to file a timely administrative claim." *Gonzalez*, 284 F.3d at 288 (citation omitted). Finally, the administrative filing requirement is a "jurisdictional prerequisite to suit that cannot be waived." *Id.* (citations omitted). Notwithstanding these

stringent requirements, there is a savings clause that can resurrect an otherwise untimely claim. "This provision excuses a plaintiff's failure to exhaust administrative remedies where: (1) the tort claim accrued within two years of the state court action and (2) the plaintiff presents the claim to the appropriate federal agency within sixty days after the dismissal of the action." *Id., citing* 28 U.S.C. § 2679(d)(5).

In the case at bar, much of the parties' arguments concern the accrual date of Plaintiffs' claim. Plaintiffs seek to invoke the "discovery rule" to push the accrual date of their cause of action to February 9, 1999, the day they received the coroner's autopsy report detailing the cause of their son's death. While Defendant argues that Plaintiffs' claim accrued on August 5, 1998, the date of their son's death.

 The general rule in the law of tort is that a claim accrues on the date of the plaintiff's injury. *See United States v. Kubrick,* 444 U.S. 111, 120, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *Gonzalez,* 284 F.3d at 288. Under this rule, the Plaintiffs' claim accrued on August 5, 1998, the date of their son's death. Plaintiffs filed their Commonwealth claim on November 5, 1999, and filed their administrative claim on September 13, 2000. Thus, pursuant to the two-year statute of limitations set forth in Section 2401(b), the claim would be time-barred, without taking into account the possible application of the afore-mentioned savings clause.

 Plaintiffs however, seek to invoke the "discovery rule," which provides that "a claim accrues when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the factual basis for the cause of action." *Gonzalez,* 284 F.3d at 288, *citing Kubrick,* 444 U.S. at 121–24, 100 S.Ct. 352 (citations omitted). The discovery rule utilizes an objective standard, which means that "in order to toll the statute of limitations ... the factual basis for the cause of action must have been 'inherently unknowable' at the time of the injury." *Gonzalez,* 284 F.3d at 289 (internal citation omitted). The factual basis for a plaintiff's injury is inherently unknowable if it is "incapable of detection by the wronged party through the exercise of reasonable diligence." *Geo. Knight & Co. v. Watson Wyatt & Co.,* 170 F.3d 210, 213 (1st Cir.1999).

 The discovery rule requires diligence on the part of plaintiff, for "[o]nce a plaintiff knows of the injury and its probable cause, he/she bears the responsibility of inquiring among the legal communities about whether he/she was wronged and should take legal action." *Gonzalez,* 284 F.3d at 289, *citing Kubrick,* 444 U.S. at 123, 100 S.Ct. 352. In other words, "[w]hen the facts [become] so grave as to alert a reasonable person that there may have been negligence related to the treatment received, the statute of limitations [begins] to run against the [plaintiff]." *Hau v. United States,* 575 F.2d 1000, 1003 (1st Cir.1978). Finally, the limitations period will commence, "regardless of whether plaintiffs make inquiries, and regardless of whether they are correctly advised." *Gonzalez,* 284 F.3d at 289, *citing Kubrick,* 444 U.S. at 124, 100 S.Ct. 352.

 Under the discovery rule, Plaintiffs argue that their claim did not accrue until February 9, 1999, the day they received the coroner's autopsy report detailing the cause of their son's death. We reject this argument, and hold that Plaintiffs' cause of action accrued on August 5, 1998, the date of their son's death.

As we will now explain, Plaintiffs were armed with all of the information necessary to, at the very least, inquire about any negligent care that could have contrib-

uted to their son's death well before the autopsy report was issued. The following medical evidence is relevant: First, the medical records from August 5, 1998, which lists the cause of death as "septic shock."[3] Second, the death certificate filed on September 10, 1998, which also lists septic shock as the cause of death. Third, the pathologist's report from August 18, 1998, which concluded from the information provided by Plaintiff (decedent's father), and the examination of the body, that the cause of death was septic shock due to bacteremia. Finally, the autopsy report from February 9, 1999, which listed septic shock due to bacteremia and meningitis as the cause of death.

This evidence indicates that the cause of death was not concealed by any of the medical providers involved, nor, notably, did the autopsy report reveal a new cause of death. Plaintiffs were aware, on the date of their son's death, that he had died of a massive infection that was not contained. This information, coupled with two facts alleged in the complaint: (1) that a requested blood culture was never performed, and (2) that even though Edison presented breathing problems and significant and dangerous changes in vital signs, no diagnostic tests were performed in order to diagnose the real problem and initiate the proper treatment, also provide insight into Plaintiffs' knowledge of the factual basis for their cause of action.

In sum, the totality of the circumstances vitiate against the application of the discovery rule in this case. First, is the fact that Plaintiffs teenage son was taken to the hospital for an emergency situation,

and died on that same day. This fact, in and of itself, could have given the Plaintiffs sufficient notice required to begin the statute of limitations. However, we also note that Plaintiffs received consistent medical evidence on four occasions concerning the cause of their son's death. Finally, a reading of the complaint indicates that Plaintiffs knew on the day of their son's death that certain laboratory and diagnostic tests were not performed, and this knowledge is critical to a claim for medical malpractice. Armed with all of these facts, the Plaintiffs cannot rely on the discovery rule because they had sufficient knowledge that there may have been negligence related to the treatment received on the date of their son's death.

This does not end our discussion however, because as we indicated above, the Federal Tort Claims Act contains a savings clause that can resurrect an otherwise untimely claim. The clause is 28 U.S.C. § 2679(d)(5), and it provides that:

> Whenever an action or proceeding in which the United States is substituted as the party defendant under this subsection is dismissed for failure first to present a claim pursuant to section 2675(a) of this title, such a claim shall be deemed to be timely presented under section 2401(b) of this title if-
>
> (A) the claim would have been timely had it been filed on the date the underlying civil action was commenced, and
>
> (B) the claim is presented to the appropriate Federal agency within 60

---

**3.** Septic shock is defined as "shock associated with overwhelming infection, most commonly infection with gram-negative bacteria, although it may be produced by other bacteria, viruses, fungi, and protozoa. It is thought to result from the action of endotoxins or other products of the infectious agent on the vascular system causing large volume of blood to be sequestered in the capillaries and veins; activation of the complement and kinin systems and the release of histamine, cytokines, prostaglandins, and other mediators may be involved." *Dorland's Illustrated Medical Dictionary,* 1516 (28th ed.1994).

days after dismissal of the civil action.

The United States argues that the Court should strictly apply the language of the above-cited section and deny Plaintiffs' attempt to rescue their untimely administrative claim. The United States maintains that such a remedy would run afoul of the well-settled doctrine that "a waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign." *Department of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261, 119 S.Ct. 687, 142 L.Ed.2d 718(1999).

■ The United States argues that the conditions precedent for the protection of Section 2679(d)(5) have not been met by the Plaintiffs here. First, the Government argues that the section is inapplicable because this case was not removed to this Court. Moreover, the Government contends that this case was not previously dismissed by the Federal Court for a failure to exhaust administrative remedies (the filing of an administrative claim). Finally, the Government contends that Plaintiffs did not file the administrative claim within 60 days of the dismissal of the previous case. Plaintiffs maintain that although they do not meet the exact letter of the law, they have adequately complied with the section's spirit, and should thus, be provided its protection. We agree, and will now explain why.

The purpose of Section 2679(d)(5) is to provide protection to plaintiffs that are diligently pursuing their claims, but are unaware that the proper defendant is the United States of America. The Government correctly avers that the section does appear to rigidly require: (1) the substitution of the United States as the party Defendant, (2) a dismissal for failure to present an administrative claim, and (3) the filing of a claim within 60 days of the dismissal. However, the Court has researched the issue and found the First Circuit's conceptualization of the section's requirement in the *Gonzalez* case persuasive. In that case, although the court refused to apply the savings clause because the first cause of action was filed more than two-years after the accrual, they listed the requirements for the application of the savings clause as follows: "[t]his provision excuses a plaintiff's failure to exhaust administrative remedies where: (1) the tort claim accrued within two years of the state court action and (2) the plaintiff presents the claim to the appropriate federal agency within sixty days after the dismissal of the action." *Gonzalez*, 284 F.3d at 291 n. 11, *citing* 28 U.S.C. § 2679(d)(5). Based on this language, the Plaintiffs need only file a state action within two years of the accrual date, and file a claim with the federal agency within 60 days after the state action is dismissed. We will now determine whether the facts here meet this standard.

We begin with the accrual of Plaintiffs' cause of action, which we have determined to be August 8, 1998, the date of their son's death. Plaintiffs filed their claim in the Commonwealth court on November 5, 1999. This filing is within two years of the accrual of the cause of action, and thus satisfies the first part of the First Circuit's requirement in *Gonzalez*. In the Commonwealth action, Plaintiffs' served the Government Defendant, CSILO, on February 10, 2000. CSILO moved for the dismissal of the complaint on April 27, 2000, alleging a lack of jurisdiction because they are a federal institution subject to liability only under the Federal Tort Claims Act.[4]

---

4. We note that Defendant CSILO could have removed the case to Federal Court, but elected instead to move for a dismissal in the Commonwealth Court. The Government ar-

Upon the realization that Defendant CSI-LO is indeed a federal institution, and its employees, federal employees, Plaintiffs moved for a dismissal without prejudice of the Commonwealth claim on May 25, 2000. Plaintiffs next filed a proper administrative claim on September 13, 2000. The Commonwealth court dismissed the action against CSILO on January 16, 2001.

The Government argues that Section 2679(d)(5) should not apply because Plaintiffs did not file the administrative claim within 60 days after the dismissal of the state action. That proposition is technically correct, in that Plaintiffs did not file the administrative claim within the 60 day period after the dismissal of the Commonwealth suit. However, we agree with Plaintiffs that they should not be penalized for their diligence in filing the administrative claim before the Commonwealth Court had dismissed the first case.

Here, upon the realization that CSILO and its employees were only amenable to suit under the FTCA in federal court, Plaintiffs immediately moved for a dismissal in the Commonwealth court. This occurred on May 25, 2000. Plaintiffs did not receive any notification from the Commonwealth court on the status of their motion, so they decided to file the administrative claim on September 13, 2000. Time continued to elapse, until May 3, 2001, when the Commonwealth court's January 16, 2001 dismissal was finally notified. The Court finds that Plaintiffs' actions were reasonable and diligent under the circumstances, and their failure to wait for the dismissal is easily excusable.

Our underlying rationale is that when Plaintiffs realized the Defendants were federal actors, they began the procedural steps necessary to file a FTCA suit in this Court. First, they moved for dismissal of the Commonwealth court action against CSLIO. Next, they filed the administrative complaint with the proper agency. Finally, they filed suit before this Court, after the administrative claim was denied. The Court finds these steps comply with Section 2679(d)(5) as interpreted by the First Circuit Court of Appeals. Moreover, we will not penalize Plaintiffs because the Defendants procedural strategy, or any delays in the resolution of motions filed before the Commonwealth court.

**Conclusion**

We hold that Plaintiffs filed a timely administrative claim and therefore, the Court has subject-matter jurisdiction. For the reasons set forth above, Defendant's motion to dismiss (Docket # 11) is **DE-NIED.**

**SO ORDERED.**

gues that Section 2679(d)(5) should not apply because the case was not removed. The Court does not agree that such a requirement exists, and we will not penalize Plaintiffs for the Government's procedural strategy.