The Estate of Richard J. CASTUCCI, by Sandra CASTUCCI, Individually and in her capacity as Administratrix of the Estate of Richard J. Castucci, Denise Castucci, Richard J. Castucci Jr., Brian Castucci, and Lisa (Castucci) Inello Plaintiff,

v.

The UNITED STATES of America, et al., Defendants.

No. CIV.A. 02–11312–RCL.

United States District Court, D. Massachusetts.

March 30, 2004.

---

James P. McDonald, Attorney at Law, Boston, MA, for Plaintiffs.

Matthew S. Axelrod, United States Attorney's Office, Miami, FL, Stacey Bosshardt, U.S. Department of Justice, Torts Branch, Civil Division, Washington, DC, Michael K. Fee, Ropes & Gray LLP, Boston, MA, Peter E. Gelhaar, Donnelly, Conroy & Gelhaar, LLP, Boston, MA, Margaret Krawiec, U.S. Department of Justice, Torts Branch, Civil Division, Washington, DC, Michael A. Laurano, Boston, MA, Edward J. Lonergan, Boston, MA, Dean A. Mazzone, Attorney General's Office, Boston, MA, E. Peter Mullane, Mullane, Michel & McInnes, Cambridge, MA, Peter Schlossman, U.S. Department of Justice, Torts Branch, Civil Division, Washington, DC, for Defendants.

*MEMORANDUM AND ORDER ON MOTIONS OF DEFENDANTS BATES, CREEDON, AND MORRIS TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS BASED ON THE STATUTE OF LIMITATIONS*

LINDSAY, District Judge.

This is a suit brought by Sandra Castucci, individually and in her capacity as administratix of the Estate of Richard J. Castucci, and individual members of the Castucci family (collectively, the "plaintiffs") against Richard F. Bates, Dennis F. Creedon, John J. Morris (the "defendants," all of whom were FBI agents at times relevant to the amended complaint) and others. The case arises out of the 1976 murder of Richard J. Castucci ("Castucci"), allegedly at the hands of "top echelon" FBI informants and crime lords James J. Bulger and Stephen Flemmi. In brief, the plaintiffs claim that, as part the defendants' efforts to prevent other FBI agents from investigating the alleged criminal activities of Bulger and Flemmi, the defendants provided (or permitted others to provide) Bulger and Flemmi with information from which they could deduce that Castucci was a government informant. The plaintiffs maintain that, as a direct and foreseeable result of this disclosure, Bulger and Flemmi kidnaped and murdered Castucci on or about December 29, 1976. The plaintiffs also allege that the defendants subsequently compromised later investigations into the criminal activities of Bulger and Flemmi and engaged in numerous other "cover-ups" of the their criminal activities, including the murder of Castucci, to preserve Bulger and Flemmi as top echelon informants and to conceal the FBI's corrupt relationship with them.

The complaint, filed on July 1, 2002, is in fourteen counts. Counts I through IV assert claims against the defendants under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[1] In these counts, the plaintiffs allege that (1) the defendants' alleged role in Castucci's murder violated his rights under the Fourth and Fifth amendments of the Constitution of the United States "to be secure in his person against unreasonable seizures" and "not to be deprived of his life and liberty without due process of law," Amend. Comp. ¶¶ 184, 188, 192; and (2) the defendants violated the plaintiffs' rights, under the First and Fifth amendments, to access to the courts by preventing subsequent investigations into the criminal activities of Bulger and Flemmi.

The defendants have moved under Fed. R.Civ.P. 12(b)(6) and 12(c) for dismissal or judgment on the pleadings with respect to these *Bivens* claims, arguing that the claims, filed on July 1, 2002, are barred by the applicable three-year statute of limitations.[2] For the purpose of these motions, I must treat all well-pleaded facts, and all reasonable inferences therefrom, as true. *See Rossiter v. Potter*, 357 F.3d 26, 27 (1st Cir.2004); *United States v. U.S. Currency $81,000*, 189 F.3d 28, 33 (1st Cir.1999). Dismissal or judgment on the pleadings is inappropriate unless "it appears beyond a doubt that the [plaintiffs] can prove no set of facts in support of [their] claim[s] which would entitle [the plaintiffs] to relief." *U.S. Currency*, 189 F.3d at 33 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Collier v. City of Chicopee*, 158 F.3d 601, 602 (1st Cir.1998) (noting that motions under Fed. R.Civ.P. 12(c) "ordinarily warrant the same treatment" as motions under Fed. R.Civ.P. 12(b)(6)).

 According to the defendants, the plaintiffs' claims accrued upon the plaintiffs' "learning of injury and physical cause—the death[ ] of the plaintiffs' decedent[ ] by murder." Consolidated Memorandum of Law in Support of Individual Defendants' Motions to Dismiss or for Judgment on the Pleadings on Statute of Limitations (the "Consolidated Memorandum" or "Cons.Mem.") at 2.[3] Under the law of the First Circuit, however, the plaintiffs' claims did not accrue until the plaintiffs knew or should have known of injuries and the *factual* causes of those injuries, or, in other words, the factual

---

**1.** Counts I through IV also assert *Bivens* claims against John J. Connolly, Jr., who has moved for judgment on the pleadings (docket no. 70), in part based on the statute of limitations. Likewise, Counts II through IV assert *Bivens* claims against Thomas J. Daly, who has moved to dismiss (docket no. 76), in part based on the statute of limitations. Because the motions of Connolly and Daly address more than one ground for judgment on the pleadings or dismissal, I will dispose of their motions in separate orders. To the extent that I rule on their motions based on the statute of limitations, this order will dictate the result as to that issue.

**2.** Because Congress has not established a time limitation for *Bivens* actions, the three-year Massachusetts statute of limitations, applicable in tort actions for personal injuries,

Mass. Gen. Laws ch. 260, § 2A, or civil rights actions, Mass. Gen. Laws ch. 260, § 5B, and any associated state tolling laws will apply, provided they are not inconsistent with federal law or policy. *Wilson v. Garcia*, 471 U.S. 261, 266–67, 276–80, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Because both statutes have a three-year period of limitations, it is unnecessary to decide whether Mass. Gen. Laws ch. 260, § 5B supplants Mass. Gen. Laws ch. 260, § 2A for purposes of federal civil rights actions. *Street v. Vose*, 936 F.2d 38, 39 n. 2 (1st Cir.1991).

**3.** The Consolidated Memorandum was filed in *Estate of McIntyre v. United States*, C.A. No. 01–10408–RCL (D.Mass. July 7, 2003) (docket no. 311) and expressly adopted by the defendants in their separate motions.

bases of their claims. *See, e.g., Skwira v. United States*, 344 F.3d 64, 76–77 (1st Cir.2003), *petition for cert. filed*, 72 U.S.L.W. 3539 (2004) (No. 03–1159); *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir.2002)[4]; *Attallah v. United States*, 955 F.2d 776, 780 (1st Cir.1992).[5] In certain cases, discovering a person's death may be the equivalent of discovering the factual basis of a claim. *See e.g., Skwira*, 344 F.3d at 77. ("[I]n the medical malpractice context, where there is often a direct relationship between the patient and the doctor, one need not know of a governmental causal connection (between the injury and its probable cause) for a claim to accrue . . . .") But that is not the case here. While Castucci's death by murder was unquestionably an element of the injuries forming the bases of the plaintiffs' *Bivens* claims, the real injuries in question were those to the *constitutional rights* of Castucci and the plaintiffs. *Marrapese*, 749 F.2d at 937 (where state required plaintiff to submit to unsafe medical tests, plaintiff's injury "was not a medical injury flowing from an act of malpractice but rather was an injury to his constitutional rights based upon the officers' forcing him to undergo a benzidine test against his will").[6] Because the First, Fourth, and Fifth amendments only prohibit certain conduct by *government* actors, it is axiomatic that the plaintiffs could not have had notice of any injuries to their constitutional rights and those of Castucci before knowing of the government's alleged involvement in Castucci's murder.

According to the defendants, a single newspaper article published in the BOSTON HERALD on August 9, 1998, provided the plaintiffs with the requisite notice of

**4.** *Gonzalez* and *Skwira* address the accrual of claims against the United States under the Federal Tort Claim Act, 28 U.S.C. §§ 2671, *et seq.* ("FTCA"), whereas the defendants' motions implicate the accrual of *Bivens* claims. I may rely, however, on cases addressing the accrual of either type of claim in deciding the present motions. *Marrapese v. Rhode Island*, 749 F.2d 934, 938 n. 8 (1st Cir.1984) (recognizing that although "different considerations may apply in section 1983 actions and in FTCA suits, the problems courts encounter in resolving the accrual question under federal law are basically the same").

**5.** In *Attallah*, the First Circuit explicitly rejected the government's argument that the plaintiffs' *Bivens* claims arising from the murder of the plaintiffs' courier by United States Customs agents accrued when the plaintiffs' learned that the courier had been abducted and killed: "[W]e cannot see how appellants could have known the factual basis for their claim—the robbery and subsequent assassination of their courier *by two Customs agents.*" 955 F.2d at 780 (emphasis added).

**6.** *See also Calero–Colon v. Betancourt–Lebron*, 68 F.3d 1, 4–5 (1st Cir.1995) (Lynch, J., concurring) ("There may be circumstances in which plaintiffs neither knew, nor had reason to know, at the time of their warrantless arrests that they had suffered a constitutional injury and so the statute [of limitations] would not begin to run upon arrest. . . . That the common law of false arrest has often been interpreted to establish that the common law cause of action accrues upon the arrest does not answer the question of the accrual date for § 1983 actions.") (citation and footnote omitted), *cited with approval in Nieves v. McSweeney*, 241 F.3d 46, 52 n. 4 (1st Cir. 2001); *cf. Licari v. City of Chicago*, 298 F.3d 664, 668 (7th Cir.2002) ("[Section 1983] claims accrue when the plaintiff knows or should have known that his constitutional rights were violated."); *Beck v. City of Muskogee Police Dept.*, 195 F.3d 553, 557 (10th Cir.1999) ("Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated.") (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir.1998)); *Williams v. King*, 796 F.Supp. 737, 740 (E.D.N.Y.1992) ("[A] claim under Section 1983 accrues at the moment when the plaintiff knows or has reason to know of the constitutional injury that is the basis for his action.") (internal quotation marks omitted).

the government's role in Castucci's death. The defendants' argument proceeds as follows.

> The article details how John Martorano, 'is believed to be ready to talk about as many as 25 murders—a dozen of which he allegedly participated in—from the early 1960s to the early 1970s' in connection with the hearings before Judge Wolf designed 'to explore allegations of serious FBI misconduct in how it handled' [Bulger and Flemmi]. The article specifically mentions "47-year-old Richard J. Castucci of Revere" as one of the murder victims about whom Martorano had knowledge . . . .
>
> Thus, as of August 9, 1998, plaintiffs knew or should have known that Richard J. Castucci had been murdered, that John Martorano had knowledge of the circumstances surrounding that murder, and that Martorano was a defendant in a 'case that is exposing FBI's controversial informant relationships with Bulger and Flemmi.'

Cons.Mem. at 8–19 (alterations in original) (quoting Ralph Ranalli, *Mobster's Plea Deal Reopens Unsolved Murder Probes*, BOSTON HERALD, Aug. 9, 1998, at 12 (the "Ranelli article"), *available at* 1998 WL 7352285).[7] The defendants further argue that even "[i]f none of the plaintiffs themselves saw the article the day it ran, it is virtually certain that friends or colleagues who saw the article would have

passed it along to them." Cons.Mem. at 19 n. 5.

I am not persuaded by the defendants' argument. They offer nothing more than their own simple *ipse dixit* as support for the claim that the Ranelli article came to the attention of the plaintiffs.

Moreover, it would be of no consequence even if the plaintiffs had read the Ranalli article, because the article did nothing to put a reasonable person in the position of the plaintiffs on notice of a possible claim against the defendants here. The Ranalli article addresses itself principally to an effort by John Martorano, described as an associate of Bulger and Flemmi, to negotiate an agreement for a guilty plea. The article chronicles a series of gangland murders, committed nearly thirty years earlier and said to have occurred as the Winter Hill Gang, having achieved "detente with Boston's Italian Mob," was consolidating its hold on criminal activities in the Boston area. The murder of Castucci is mentioned in the last paragraph of the Ranalli article. Even then all that is said—— after descriptions of Castucci as a convicted loan shark and of the discovery of his body—— is that Martorano "is believed to know who murdered Castucci." To be sure, the Ranalli article refers to hearings before Judge Mark L. Wolf of this court that were "exploring allegations of serious FBI misconduct in how it handled" the "controversial informant relationships" it had with

---

7. A copy of the Ranelli article is attached as Exhibit A to Consolidated Defendant Thomas J. Daly's Motion to Dismiss All Claims Asserted Against Him in Plaintiffs' Amended Complaint (docket no. 76). Because the copy of the article provided by the defendants does not indicate the pagination that existed in the original format, I will not indicate page numbers.

Rule 12(b)(6) and Rule 12(c) motions generally are decided solely on the basis of the pleadings, and reference to extraneous documents converts such a motion into one for summary judgment. Fed.R.Civ.P. 12(b) and (c); *Rubert–Torres v. Hospital San Pablo, Inc.*, 205 F.3d 472, 475 (1st Cir.2000). Because the parties do not dispute the authenticity of the Ranalli article, however, I need not convert the defendants' motions. *See, e.g., Watterson v. Page*, 987 F.2d 1, 4 (1st Cir.1993) (noting that courts have made an exception to the requirement that consideration of documents outside the complaint converts a Rule 12 motion to a motion for summary judgment where documents, the authenticity of which is not disputed, are considered).

Bulger and Flemmi. The Ranalli article, however, does not state the nature of the "controversial relationships," or when these relationships began.[8] Nor does the Ranalli article explain the nature of the alleged "serious misconduct" of the FBI being explored in the hearings before Judge Wolf or whether that misconduct had anything to do with the murders discussed in the article. The article is rife with speculative propositions requiring Holmesian deductive reasoning to reach the state of awareness that the defendants claim the plaintiffs should have had: maybe Martorano knew who killed Castucci; maybe the murder had something to do with Bulger and Flemmi; maybe the murder was related to the controversial relationships between Bulger and Flemmi on the one hand, and the FBI on the other, and not to gangland politics and economics; maybe one can fathom that, whatever the relationships between Bulger/Flemmi and the FBI, those relationships included the disclosure to Bulger and Flemmi by FBI agents of Castucci's status as an informant with the foreseeable result that Castucci would be murdered. One would have to have extraordinary insight to divine, from the possibilities sketchable from the Ranalli article, a causal connection between FBI misconduct and the murder of Castucci.

The discovery rule requires neither extraordinary insight nor extraordinary deductive powers; in the absence of actual knowledge of a claim, the discovery rule requires only the "exercise of reasonable diligence" in discovering the claim. *Gonzalez*, 284 F.3d at 288. In my view, there is nothing in the Ranalli article that would have put the plaintiffs on such inquiry notice as to require effort on their parts to discover the claims they now make. It is entirely reasonable for the plaintiffs not to have inferred from the Ranalli article a relationship between the murder of Castucci and any constitutional injury to Castucci or themselves based on conduct of government actors. It is therefore not beyond doubt that the plaintiffs' *Bivens* claims had accrued by August 9, 1998.

Other than the publication of the Ranelli article, the defendants do not offer support for the conclusion that the plaintiffs were on actual or constructive notice of their constitutional injuries prior to July 1, 1999. Thus, for purposes of this motion, I hold that the plaintiffs' claims, filed on July 1, 2002, are not time barred and DENY the following motions:

Consolidated Defendants Richard F. Bates' and Dennis F. Creedon's Motion to Dismiss Amended Complaint and Request for a Hearing (docket no. 73); and

Motion of Defendant John M. Morris for Judgment with Prejudice on the Pleadings by Reason of Statute of Limitations (docket no. 74).

SO ORDERED.

---

8. According to the amended complaint, Castucci was murdered on December 29, 1976. Am. Compl. ¶ 2. The plaintiffs allege that Bulger and Flemmi became FBI informants in 1975, and that Bulger became a "top echelon" informant on February 4, 1976. Id. ¶¶ 94–99. It thus appears that Castucci was murdered shortly after Bulger and Flemi became FBI informants.