**Michael WILLIAMS, Plaintiff,**

v.

**Gwendolyn S. KING, Commissioner of the Department of Health and Human Services, 1329 Rockaway Parkway, Brooklyn, New York and Etta Vesely, Director of the New York City Human Resources Administration, Office of Fiscal Affairs, Income Maintenance Operations and E. Presser, SSI Liaison Unit, 200 Church Street, New York, New York, Defendants.**

**No. CV–91–4526.**

United States District Court, E.D. New York.

July 15, 1992.

Michael Williams, pro se.

Parisis G. Filippatos, Asst. Corp. Counsel, Law Dept., New York City, for Vesely and Presser.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

The pro se plaintiff in this action has alleged violations of his constitutional rights. Two of the three defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion of those two defendants is granted.

## FACTS

For the purposes of this motion, the facts as alleged in the complaint are assumed to be true. The plaintiff, Reverend Michael Williams, applied in April of 1978 to the Social Security Administration ("SSA") of the Department of Health and Human Services ("HHS") for Supplemental Security Income ("SSI") benefits. Complaint at 2. He claimed that he was permanently disabled because of a "mental impairment." *Id.* This application for benefits was denied by HHS; a second application made by the plaintiff in 1982 was also denied. Finally, after a successful appeal of this second denial to the United States District Court for the Eastern District of New York, the plaintiff in 1983 was awarded SSI benefits retroactive to April of 1978. *Id.* at 3.

While his applications for SSI benefits were pending, the plaintiff received interim benefits from the State of New York Department of Social Services ("DSS") through the New York City Human Resources Administration ("HRA"). When, on February 10, 1984, the SSA awarded the plaintiff benefits retroactive to April of 1978, SSA sent two checks in the total of $14,276.79 to DSS. HRA, on behalf of itself and of DSS, withheld from those two checks the sum of $9,190.60 as a recoupment of state interim benefits provided to the plaintiff before his award of SSI benefits. *Id.* HRA then forwarded the balance of the $14,276.79—that is, the sum of $5,086.19—to the plaintiff. The plaintiff believed that the calculations of the HRA were erroneous and that he was entitled to an additional $5,754.80 from the SSI award. *Id.* Accordingly, the plaintiff exercised his right to a "fair hearing" before the HRA; however, he never received a decision on his claims. *Id.*

The plaintiff brought this action pursuant to 42 U.S.C. § 1983 in November of 1991; he alleges that the defendants— Gwendolyn S. King (Commissioner of HHS), Etta Vesely (Director of HRA), and E. Presser (designated by the plaintiff as "SSI Liaison")—violated his federal rights under the Fifth and the Fourteenth Amendments to the United States Constitution. He claims first that the defendants King, Vesely, and Presser denied him due process of law in that they provided him with notice of the HRA recoupment and with a hearing to contest that recoupment only after the actual withholding of benefit money by the HRA. *Id.* at 4–5. The plaintiff contends that the due process guarantee of the federal Constitution requires the defendants to provide a "pre-recoupment" hearing. *Id.* Second, he contends that defendants Vesely and Presser denied him due process of law in that they "made at least two (2) mistakes and errors in calculating the amount" of the appropriate withholding. *Id.* at 5. The plaintiff seeks from each of these defendants $10,000.00 in compensatory damages, $250,000.00 in punitive damages, and the $5,754.00 (with interest) that

he alleges was wrongly recouped by the HRA. *Id.* at 7–8.

The defendants Vesely and Presser have now moved this court under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim on which relief can be granted. These defendants argue that this action was untimely filed, that due process does not require a pre-recoupment hearing, and that Section 1983 does not render state officials liable for negligence. The Office of the United States Attorney has not yet answered the complaint or otherwise appeared on behalf of the defendant King.

## DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for failure to state a claim on which relief can be granted. On a motion under this rule, a court must "accept the material facts alleged in the complaint as true...." *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). A Rule 12(b)(6) motion may not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). This caution about dismissal under Rule 12(b)(6) assumes greater force if, as is the case here, the plaintiff proceeds pro se or if his complaint alleges a violation of his civil rights. *Easton,* 947 F.2d at 1015.

This action arises out of the intricate network of federal, state, and municipal statutes and regulations that govern the administration of publicly sponsored disability benefits. Under 42 U.S.C. § 1382c(a)(3)(A), a person who claims to have a disability is eligible for SSI benefits from the SSA if he demonstrates that he has a "medically determinable physical or mental impairment" that prevents him from engaging in "any substantial gainful activity" and which can be expected to last for more than one year or to result in death. The processing and adjudication of SSI disability applications, however, is rare-

ly expeditious. For this reason, many states provide cash assistance payments to SSI claimants during the pendency of these applications. In order to facilitate such cooperation by the states, "Congress in 1974 provided a mechanism called the Interim Cash Reimbursement Program (IAR), 42 U.S.C. § 1383(g) ..., whereby states could recoup interim assistance benefits paid to SSI applicants." *Rivers by Rivers v. Schweiker*, 692 F.2d 871, 872 (2d Cir. 1982), *cert. denied*, 460 U.S. 1088, 103 S.Ct. 1783, 76 L.Ed.2d 353 (1983). Pursuant to this program:

> [A] state must (1) enter into a formal reimbursement agreement with [HHS], and (2) obtain written authorization from the individual applying for SSI benefits permitting [HHS] to withhold the individual's initial SSI check and pay to the state an amount sufficient to reimburse for interim assistance provided to the individual, 42 U.S.C. § 1383(g)(1)....

After a state has recouped the amount of interim benefit payments that it provided to a particular applicant, the applicant has a right to a hearing "by the State" if he disagrees with "the State's actions regarding repayment of interim assistance." 20 C.F.R. § 416.1920. That is, the applicant is entitled to a hearing before the appropriate state agency in order to contest the amount of the recoupment. *Id.* He is not "entitled to a *Federal* hearing on the State's action regarding repayment of interim assistance", *id.* (emphasis added); however, he may appeal to the SSA from the disposition of the state hearing, 20 C.F.R. § 416.1922.

The State of New York, through the DSS, provides interim assistance payments under its "home relief" program to SSI applicants. As to SSI applicants in New York City, the interim assistance program is administered by the HRA. Pursuant to controlling federal and state provisions, the HRA is required to secure from an SSI applicant permission to recoup the amount of interim assistance paid to the applicant during the pendency of an ultimately successful SSI application. 18 N.Y.C.R.R. § 370.7(a)(4). Once such recoupment is made, HRA must notify the applicant of the amount of the recoupment and also of his right to a fair hearing:

> Within 10 working days after receipt of an initial [SSI] payment, the local social services director shall send the balance of the initial payment, if any, to the recipient. The local district shall notify the recipient of the following:
>
> (i) the initial date of eligibility for SSI;
>
> (ii) the amount of the initial payment received by the local district;
>
> (iii) the period of time during which interim assistance was provided, the total amount of interim assistance provided and a monthly accounting of interim assistance benefits;
>
> (iv) the amount deducted as reimbursements of interim assistance; and
>
> (v) the recipient's right to a fair hearing if he objects to the amount deducted in accordance with subparagraph (iv) of this paragraph.

18 N.Y.C.R.R. § 370.7(c)(4). This right to a fair hearing "cannot be limited or interfered with in any way." 18 N.Y.C.R.R. § 358–3.1(a).

### 1. *The Applicable Statute of Limitations*

The defendants Vesely and Presser contend first that this action is barred by the statute of limitations. They correctly point out that the applicable limitations period in New York for an action under Section 1983 is three years. *Owens v. Okure*, 488 U.S. 235, 251, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989). Furthermore, a claim under Section 1983 accrues at the moment when the plaintiff "knows or has reason to know" of the constitutional injury that is the basis for his action. *Pauk v. Board of Trustees of the City University of New York*, 654 F.2d 856, 859 (2d Cir. 1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982). In this case, the defendants argue, the plaintiff knew or had reason to know of the allegedly unconstitutional actions of the defendants in February of 1984 when he received notice of the recoupment by the HRA. Accordingly, they submit, the three-year statute of limitations for this action expired in February of 1987—over four years before the complaint in this case was filed.

· The plaintiff, however, argues that immediately after he received notice of the HRA recoupment he applied for and was granted an administrative fair hearing by the DSS. Memorandum of Plaintiff at 2. Further, although the hearing was held in April of 1984, the plaintiff maintains that he has never received notice of the disposition of the matter by DSS. *Id.* ("The plaintiff to this very date ha[s] not received any decision or determination on the issues raised at the hearing....."); see also Complaint at 4 ("The plaintiff did request and have a fair hearing decision on the issue[;] however, he never received a decision from the fair hearing authorities in Albany, NY. The plaintiff's case was closed."). For their part, the defendants have not provided the court with any information as to the disposition of the plaintiff's fair hearing before the DSS; accordingly, it is difficult for this court to discern whether or not the three-year statute of limitations may have been tolled since April of 1984—at least as to the plaintiff's claim that the defendants miscalculated the recoupment. See, e.g., *Spannaus v. United States Department of Justice,* 824 F.2d 52, 56–57 (D.C.Cir. 1987) ("Tautologically, a suit cannot be maintained in court—and a cause of action does not 'first accrue'—until a party has exhausted all administrative remedies whose exhaustion is a prerequisite to suit."). Insofar as the submissions of the parties are extremely vague on the subject of the plaintiff's fair hearing—and insofar as clarification of that matter would almost surely necessitate reference to "matters outside the pleading"—the court declines to rule on this aspect of the defendants' statute of limitations defense.

Although the statute of limitations may have been tolled with respect to the plaintiff's claim that the defendants Vesely and Presser miscalculated the amount of the recoupment, it was not tolled with respect to the plaintiff's claim that due process entitles him to a pre-recoupment hearing. As stated by the Second Circuit in *Higgins v. New York Stock Exchange, Inc.,* 942 F.2d 829, 833 (2d Cir.1991): "[E]quitable tolling ... applies only when resort to an agency is a jurisdictional prerequisite to

seeking review in federal court." Here, the plaintiff's application to DSS for a fair hearing was by no means a "jurisdictional prerequisite" to his challenge under Section 1983 of the due process adequacy of a post-recoupment hearing; indeed, he could have brought this claim the day he received notice from the HRA that part of his SSI award had been withheld. Accordingly, the claim against the defendants Vesely and Presser as to the constitutionality of post-recoupment hearings was untimely filed and is now barred.

### 2. *Due Process and the Post–Recoupment Hearing*

■ Even if the plaintiff's claim that the post-recoupment hearing is inadequate as a matter of due process were not time-barred, however, this court would still have to dismiss it for failure to state a claim on which relief can be granted. In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court determined that, as to the termination of disability benefits, due process does not require a pre-termination hearing; rather, the court held, a post-termination hearing is adequate. *Id.* at 349, 96 S.Ct. at 909. The Court there determined that the "identification of the specific dictates of due process generally requires consideration of three distinct factors":

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903.

It is patent that the interest of the plaintiff here is similar to that of the plaintiff in *Eldridge* but is nonetheless of lesser magnitude. Here, the interest of the plaintiff is in the expeditious receipt of all the retroactive benefits to which he is entitled; there, the interest of the plaintiff was in

uninterrupted benefits. However, in this case, the plaintiff—who by definition has been receiving interim assistance from the state—is confronted with a withholding of money from an award of retroactive disability benefits; that is, he is confronted with a possible delay in the receipt of his retroactive benefits. Indeed, as one court has noted, a pre-recoupment hearing would only *lengthen* the period in which SSI recipients would have to await their retroactive awards. *Moore v. Colautti*, 483 F.Supp. 357, 373 (E.D.Pa.1979), *aff'd*, 633 F.2d 210 (1980). In *Eldridge*, by contrast, the plaintiff faced the termination of such benefits altogether. Thus, the interest of this plaintiff is less compelling than that of the plaintiff in *Eldridge*. As to the second factor—"the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"—the balance tips away from the plaintiff. Calculation of the appropriate amount of recoupment is foremost a matter of determining the total interim benefits paid to the applicant by the state and of subtracting that sum from the SSI award. Insofar, then, as recoupment determinations are almost mechanical, the "risk of an erroneous determination" is only marginally greater if the required hearing is held after the recoupment rather than before the withholding. Finally, the interest of the state in the existing procedures is no less here than it was in *Eldridge:* "[E]xperience with the constitutionalizing of government procedures suggests that the ultimate additional cost in terms of money and administrative burden would not be insubstantial." *Eldridge*, 424 U.S. at 347, 96 S.Ct. at 909.

*Eldridge* controls the disposition of this plaintiff's claim: If due process does not require a hearing before the *termination* of disability benefits, it necessarily follows that due process does not require a hearing before disability benefits are *withheld* for the purposes of state agency recoupment. The interest of the recipient is simply stronger in the former case than in the latter. Accord: *Moore*, 483 F.Supp. at 373 ("Balancing the factors considered by the

Supreme Court in *Mathews v. Eldridge*, we conclude that the post-collection hearing currently provided for [state interim assistance] recipients satisfies the dictates of procedural due process."). Accordingly, this claim must be dismissed as against the defendants Vesely and Presser.

### 3. *Due Process and the Miscalculation of Recoupment*

 The plaintiff's other claim against the defendants Vesely and Presser is that they "made at least two (2) mistakes and errors in calculating the amount of money" which the state was entitled to recoup. Complaint at 5. See also *id.* at 6 ("[T]here were several errors made in calculating the money owed to the defendants-agency."). As alleged, however, the plaintiff has not stated a claim that these defendants "deprived" him of property in violation of the Fourteenth Amendment. As the Supreme Court stated in *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986): "[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." That is, a "mere lack of due care" by a state official is not cognizable as a "deprivation" under the Fourteenth Amendment. *Id.* at 330–31, 106 S.Ct. at 664. Because the plaintiff here has only alleged that the defendants Vesely and Presser *mistakenly* miscalculated the amount of the recoupment, he does not state a claim of deprivation of property without due process of law. Accordingly, his second claim against these defendants must also be dismissed.

### CONCLUSION

For the reasons set forth above, the motion of the defendants Vesely and Presser is granted; this action is dismissed in its entirety as against those two defendants.

SO ORDERED.