Charles W. MASSIE, III, Plaintiff,

v.

**IKON OFFICE SOLUTIONS, INC., Defendant,**

No. 02CV1032.

United States District Court, N.D. New York.

Aug. 11, 2005.

Charles W. Massie, III, Syracuse, NY, Plaintiff Pro se.

Coudert Brothers LLP (Darrell S. Gay, Esq., Sonya D. Johnson, Esq., of Counsel) New York City, for Defendant.

## MEMORANDUM DECISION AND ORDER

MUNSON, Senior District Judge.

Defendant IKON Office Solutions, Inc. ("IKON"), offers customers total business solutions for production of outsourcing needs, including copier and printer color solutions, facilities management, network design and consulting, and e-business development. IKON's Technology Education Unit ("TEU") marketed training services for computer software and hardware to individuals, corporations, governments and organizations. The TEU employed approximately 320 people in 15 facilities located throughout the United States. Plaintiff worked for IKON as an Account Executive, a sales job, in the TEU, in its Syracuse, N.Y. office from November 1, 1999 through September 2000. In December 2001, IKON sold the TEU to Computer Services Corp., an affiliate of Sun Capital Partners of Boca Raton, Florida.

While at IKON, plaintiff's supervisor was now dismissed co-defendant, John Watkins. Plaintiff alleges that Watkins, subjected him to performance demands that were not required by any other staff member; retaliated against him for not accepting Watkins' religious related materials and was terminated based upon a false charge of insubordination.

Plaintiff filed a charge with the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC"). The EEOC subsequently adopted the findings of the NYSDHR that investigates plaintiff's charge, and dismissed plaintiff's claim. The EEOC adopted the findings of the state fair employment practices agency that investigated plaintiff's charges, and issued a right-to-sue letter on June 3, 2002. Plaintiff commenced legal proceedings against the defendants with the filing of a complaint on August 8, 2002. At this court's direction, he filed an amended complaint on October 7, 2002, claiming that defendants violated Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C § 2000e *et seq.*, and the Civil Rights Act of 1991. Plaintiff alleged that defendants conduct discriminated against his religion, that they imposed unequal terms and conditions of employment, and retaliated against him by unjustly terminating his employment. The amended complaint seeks reinstatement as an Account Executive, retroactive back pay, punitive damages, attorney fees and costs.

In May 2003, a motion to dismiss the complaint in this case was brought in this court by defendant IKON and then defendant John Watkins. After reviewing the submissions of the respective parties and hearing oral argument on the motion, the court denied the motion to dismiss the

complaint as against defendant IKON, and granted the motion to dismiss the complaint as against defendant John Watkins.

Currently before the court is IKON's motion for summary judgment dismissing the complaint pursuant to Federal Rule of Civil Procedure 56(c) ("that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."). Plaintiff has entered opposition to defendant's motion.

## DISCUSSION

The principles applicable to summary judgment are familiar and well-settled. Summary judgment may be granted only when there is "no genuine issue as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see also *Hermes International v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2d Cir.2000). A court's role is "to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party," *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986); however, the non-movant may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Id.* at 12. Instead, when the moving party has documented particular facts in the record, "the opposing party must 'set forth specific facts showing that there is a genuine issue for trial.'" *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986) (quoting Fed.R.Civ.P. 56(e)). Establishing such facts requires going beyond the allegations of the pleadings. *Weinstock v. Columbia University*, 224 F.3d 33, 41 (2d Cir.2000). Accordingly, unsupported allegations in the pleadings cannot create a material issue of fact. *Id.*

██ Plaintiff appears *pro se*, and the court is sympathetic to the plight of the unrepresented, and is mindful of the clearly announced principle that encourages the federal courts to accord *pro se* litigants greater leniency with respect to certain procedural requirements more easily fulfilled by members of the bar. *Mount v. Book-of-the-Month Club, Inc.*, 555 F.2d 1108, 1112 (2d Cir.1977) ("A layman representing himself . . . is entitled to a certain liberality with respect to procedural requirements"); *Stewart v. United States Postal Service*, 649 F.Supp. 1531, 1535 (S.D.N.Y.1986) ("the law downplays the strict application of harsh procedural rules when a party is *pro se* "). Moreover, the Court has given careful consideration to the general rule that where, as here, *"pro se* papers implicate the vindication of civil rights or civil liberties," they are to receive a particularly liberal construction. *Stewart*, 649 F.Supp. at 1535. *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991); *Williams v. King*, 796 F.Supp. 737, 739 (E.D.N.Y.1992).

██ Nevertheless, the net effect of the principles cited above does not require that the courts disregard completely procedural requirements or rules of substantive law whenever a *pro se* litigant alleges a civil rights violation. Rather, although the courts have "an obligation to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights . . . '[t]he right of self-representation does not exempt a party from compliance with the relevant rules of procedural and substantive law.'" *Clarke v. Bank of New York*, 687 F.Supp. 863, 871 (S.D.N.Y.1988)(quoting *Birl v. Estelle*, 660 F.2d 592, 593 [5th Cir.1981] ). *Michelson v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 619 F.Supp. 727, 741–42 (S.D.N.Y. 1985)(*"pro se* litigants . . . like all parties to a litigation, cannot rely upon [their] pro se status as a shield from all mistakes but

must at some point bear the consequences of [their] procedural errors").

 In his opposition memorandum to IKON's summary judgment motion, plaintiff sets forth a claim that John Watkins' actions toward him constituted intentional discrimination prompting a reckless disregard for his human rights, and entitling plaintiff to punitive damages. The conduct complained of was not before the court until plaintiff filed a memorandum in opposition to summary judgment. No mention of it appeared in the original Complaint or the Amended Complaint. Discovery by plaintiff did not focus on investigating such conduct thereby providing the defendants with notice that he intended to pursue this claim. Having received no notice of it, the defendant had no opportunity to investigate it when defendant conducted its own discovery. A party may not rely on wholly new allegations of wrongdoing to resist a motion for summary judgment. *Wilburn v. Dial Corp.*, 724 F.Supp. 521, 525 (W.D.Tenn. 1989).

The Federal Rules of Civil Procedure provide for liberal notice pleading at the outset of the litigation because "[t]he provisions for discovery are so flexible" that, by the time a case is ready for summary judgment, "the gravamen of the dispute [has been] brought frankly into the open for inspection by the court." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512–13, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (noting that the "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims"). Once a case has progressed to the summary judgment stage, therefore, "the liberal pleading standards under *Swierkiewicz* and [the Federal Rules] are inapplicable." *Gilmour v. Gates McDonald & Co.*, 382 F.3d 1312,

1315 (11th Cir.2004) (holding that a plaintiff could not raise a new claim in response to a summary judgment motion); see also 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2723 (3d ed. Supp.2005) ("A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a)."). To permit a plaintiff to do otherwise would subject defendants to unfair surprise. *Guiffre v. Local Lodge No. 1124*, 940 F.2d 660, 1991 WL 135576, at *5 (6th Cir.1991)(refusing to hear claims raised for the first time in opposition to summary judgment because, "[h]aving received no notice of them, the defendants had no opportunity to investigate them when they conducted their own discovery"); *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir.2001) (stating that even under the liberal notice-pleading regime, the Federal Rules of Civil Procedure still require "that the complaint give the defendant fair notice of the claim and its supporting facts").

Even construing the allegations in the Amended Complaint as generously as possible, the only claims that plaintiff asserted were unequal employment, retaliation. and termination of employment. No allegations are made regarding Watkins' alleged intentional discrimination that promoted reckless disregard for human rights. Consequently, this claim will not be considered by this court in ruling on defendant's motion for summary judgment.

This court will also not consider plaintiff's surreply to defendant's reply to plaintiff's memorandum. Rule 7.1, 4(b)(1) of the Local Rules of Practice for the United States District Court Northern District of

New York does not permit a surreply in dispositive motions practice.

Plaintiff claims that his superior, John Watkins, subjected him to religious discrimination, disparate treatment and retaliatory dismissal, and that defendant IKON knew, or should have known, about his actions but did nothing to prevent or rectify it. Plaintiff was employed by IKON as an Account Executive from November 1, 1999 through September 14, 2000. An Account Executive's job entailed cold calling on business establishments and try to interest them in the educational training products IKON had available. Likely customers were offered a free coupon for a single session of training in one of several "Computer Application" training classrooms. If the training period proved satisfactory, the likely customer might agree to pay for further training periods. The Account Executive was required to make an average of 50 cold calls per day and to qualify a minimum of 5 likely customers per day for a free training coupon

An Account Executive was obliged to achieve the minimal acceptable levels for sales of IKON products and services, collections, calls and coupons. Before being hired, plaintiff received, reviewed and executed an Account Executive Commission Structure Acknowledgment that specifically outlined his monthly sales and collection level requirements. Plaintiff was supervised by Aaron Ballard from November 1999 to June 20, 2000, and by John Watkins for the rest of his employment term at IKON.

During the time he worked at IKON, plaintiff was given several written and oral warnings regarding his inadequate work performance throughout his term of employment. On November 26, 1999 and January 25, 2000, he had received a Document of Verbal Warning admonition from Aaron Ballard because an Account Executive was to make sales calls on at least 50 businesses per day and plaintiff was only averaging 27 such calls. On June 1, 2000, plaintiff received an email from facility manager, John Watkins, concerning his low call count.

In March 2000, plaintiff received and executed an Account Executive Interim Report that showed that his levels of sales collections and calls were under IKON's minimum criteria. The report warned that if minimal acceptable levels were not obtained for three consecutive months, employment would be terminated. Plaintiff signed the report acknowledging that he understood its significance and would use his best efforts to meet the minimal acceptable standards.

At the same time, plaintiff explained to Ballard that part of his low production level could be due to his lack of training for the position, and inquired when he was going to get the training for the job that was included in his employment agreement with IKON. It was then agreed upon that IKON would send plaintiff to the CORE–4 Relationship Sales Training seminar in Atlanta, GA. This one week training seminar was usually reserved for employees who showed a potential for learning and whom the company felt that the investment was well worth the outlay. This expense was approved by General Manager Watkins, who later advised Robert D. Shannon, the State Division of Human Rights investigator handling plaintiff's claim, that IKON would not have spent $4,000 sending plaintiff to the training seminar unless they planned to keep him as an employee.

Plaintiff successfully completed the training course in May 2000. However, his work endeavors remained inadequate, and in June 2000, he received another Documentation of Verbal Warning for improperly registering customers in without receiving payments from them.

On June 30, 2000, John Watkins met with plaintiff to discuss his inability to attain the required minimum sale and collection levels. Although plaintiff's salary could have been reduced for these shortfalls, plaintiff and Watkins agreed that plaintiff would move to a Level II arrangement, and be paid on a commission basis only. This meeting resulted in plaintiff receiving another Employee Counseling Report that plaintiff executed. The Report listed the necessary levels of sales the plaintiff was to reach along with his actual sales. In July 2000, plaintiff received another Employee Counseling Report concerning his insufficient sales output. The Report warned that if he didn't meet the minimum of $20,000 in sales in August, he would be terminated, and if he fell below the $20,000 minimal sales level for any month thereafter, he would be terminated.

When plaintiff began his employment at IKON in early November 1999, he was given, and signed a receipt for a copy of IKON's Employee Handbook. The handbook contained specific policies against the use of its email facilities for sending or receiving non-business related activities such as personal messages and jokes. Violations of this policy were to be reported to the violator's manager. (IKON Office Solutions Handbook, pp. 41–44).

On June 26, 2000, plaintiff failed to comply with the Handbook's restrictions on improper use of its email system by sending co-workers non-work associated emails. Plaintiff acknowledged that a certain email referred to "New Barbies" with specific citations to "exoticbarbie," "lactatingbarbie," "sororitybarbie" and "transbarbie." (Massie Tr. at pp. 115, 5–7; 116, 15–25). Another email asked a female co-worker whether she was a fan of the music group Def Leonard, or pornographic star, Ron Jeremy. (Massie Tr. at pp. 100:20;101:5). Although his supervisor, John Watkins, instructed him to discontinue sending emails of that character, plaintiff continued to do so through the month of July 2000. During this period, plaintiff sent emails entitled "Dream a Little of Me......" (Massie Tr. at pp. 109:17–20, 114:13;115:7); "Take a Break From Your Busy Schedule" (*Id.* p. 115: 2–8) "True Lust" (*Id.* at p. 115:2–8); Aaron at Diamond Dolls, a picture of co-worker Aaron Ballard at a gentlemen's club (*Id.* 118:22—119:14); IKON's New Keyboard with a picture of a computer key with the words "Fuck It" on it (*Id.* at p. 119:16–23) "I Finally Got My Handicapped Sticker" with an individual sitting in a wheelchair with "Blow Job Accessible" printed under the picture; (*Id.*, p. 120: 15—23); and "Dear Penis" (*Id.* at pp. 121 24—122:3). On July 26, 2000, sent an unauthorized mass email to his friends, co-workers and John Watkins that described an email beta test pyramid scheme. For a second time, John Watkins put plaintiff on notice that he was not to use the company email system for non-business related purposes. (*Id.*, pp. 105:23–106: 12–14).

On August 2, 2000, plaintiff once again disregarded company's email use policy by sending IKON's customers a non-business connected named "XXX–Image is Everything" (*Id.*, p. 122:15, 123:10), and shortly thereafter, sending his former supervisor, Aaron Ballard, a non-work associated email called, "She Shoots, She Scores ..." (*Id.* pp. 115: 2–8, 121:20–21). On August 4, 2000, plaintiff sent a co-worker another unauthorized email about a confused manager and used John Watkins as the confused manager. (*Id.* p. 113:10–21) On August 23, 2000, John Watkins emailed plaintiff warning him that any further misuse of the company's email system will be a direct violation of his wishes and would be constituted as insubordination. (*Id.* 108:17–23; Johnson Aff. Ex. 16).

On September 13, 2000, plaintiff sent an email to Don Greger, John Watkins, supervisor, concerning the need to "enhance the attitude of the sales room." (Massie Tr. p. 130). The letter requested Mr. Greger's help in getting effective sales management in the Syracuse office. It then stated that:

Mr. John Watkins, General Manager is trying to wear both General Manager and Sales Manager hats. This is poor because the responsibilities of both positions require two different skill sets and are occasionally at odds with one another. The net result of this current situation is that our team then is required to take on additional management duties, cutting into the time allotted for selling. There is no one to go to for upper level decisions because Mr. Watkins is usually doing three things:
1) In a meeting
2) Out of the Office
3) Working on it

There is a bad level of morale here in the sales room because we are not getting the assistance needed to do our jobs or worse are getting browbeat by Mr. Watkins for technical mistakes that would not happen if there were an actual sales manager (Plltf.'s Memorandum of Law Ex. 16).

FACT 1: We have not had a single sales promotion since the termination of the former sales manager.

FACT 2: We have been forced to do double and triple make requests for additional information policy, protocol and clerical assistance.

FACT:3: We are forced to "steamroll" class requests for new raining opportunities and new technology because Mr. Watkins is not concerned with what "can" sell, but more with what "has" sold. An example is a sold out class in "Cold Fusion" that is not on our schedule (and Should have been) and was originally rejected as a class request.

FACT 4: Our training manager cannot assist on a very lucrative sales call because she is being used to teach a class. Fact of the matter is that the training manager is not being allowed to manage because she has very little in the way of resources to work with in the first place.

FACT 5: We have not had a single sales meeting, weekly one on one, monthly review, or promotion since the termination of our former sales manager.

We the sales team are not asking for much. We ask that we be able to do our jobs in the best fashion that we can. This is how we intend to drive IKON higher and higher. In order to do that we need a manager. We don't need a cheerleader to once a month to come back and push for another $500 in sales. We don't need a taskmaster to threaten our job security every time a simple mistake is made. We don't need someone to throw us in the water and then jump on our backs as a way of teaching us how to swim. We simply need a manager.

Looking forward to your assistance in this matter.

The Sales Team of Syracuse Education.

On September 14, 2000, plaintiff's employment at IKON was terminated for misconduct and insubordination.

Plaintiff contends that John Watkin's proselytizing constituted religious discrimination, that Watkins retaliated against him for not accepting the religious proselytizing, and that he was dismissed from IKON's employ because he would not accede to Watkins' spiritual dogma. The amended complaint alleges that he was subjected to religious discrimination, received unequal terms and conditions of

employment, was retaliated against by Watkins, and eventually terminated because of his religion.

Plaintiff maintains in his amended Title VII complaint that while in Watkins' office, he compelled him to read the bible on the following dates:

June 1, 2000 After a discussion of the "March for Jesus"

June 2, 2000 After a meeting regarding the position of Sales Manager

June 17, 2000 After a meeting regarding the removal of a sign reading "True Lite" from plaintiff's work area

June 30, 2000 After a counseling session regarding plaintiff's sales performance

That on June 25, Watkins called him into his office and informed him that he had to collect one half of his monthly total sales by the middle of the billing month even though no other account executive was required to do so, and on July 29, 2000, plaintiff received a "visual bible" attachment from Watkins that required him to read a bible passage on his computer before he could access his regular files.

■ To establish a prima facie case of religious discrimination, a plaintiff must plead and prove that (1) he has a bona fide belief that compliance with an employment requirement is contrary to his religious faith; (2) he has informed his employer about the conflict; and (3) he was discharged because of his refusal to comply with the employment requirement. *Philbrook v. Ansonia Board of Education,* 757 F.2d 476, 481 (2d Cir.1985); *Hussein v. Pierre Hotel,* 2001 WL 406258 (S.D.N.Y. April 20, 2001, *aff'd.* 25 Fed.Appx. 84, 2002 WL 200299 (2d Cir.2002), *cert. denied* 537 U.S. 978, 123 S.Ct. 439, 154 L.Ed.2d 337 (2002)); *Brown v. General Motors Corp.,* 601 F.2d 956, 959 (8th Cir.1979); *Turpen v. Missouri–Kansas–Texas Railroad Co.,* 736 F.2d 1022, 1026 (5th Cir. 1984).

■ If the employee establishes a prima facie case, the burden then shifts to the employer to show it could not accommodate the employees' religious beliefs without undue hardship. *Id.* Here, plaintiff failed to make out his prima facie case. He did not show that his employer was on notice of John Watkins' penchant for evangelizing subordinate employees.. Clearly, plaintiff was aware of Watkins' actions, but there is no evidence in the record showing that he requested any sort of accommodation to limit or prevent this evangelization. An employer's knowledge that an employee is a born-again Christian is insufficient to put the employer on notice of that employee's need to evangelize to co-employees. "Knowledge that an employee has strong religious beliefs does not place an employer on notice that she might engage in any religious activity....". *Knight v. Connecticut Department of Public Health,* 275 F.3d 156, 167 (2d Cir.2001), quoting *Chalmers v. Tulon Company of Richmond,* 101 F.3d 1012, 1020 (4th Cir.1996).

Plaintiff admits that he did not tell his corporate employer about John Watkins' perceived evangelization even though he acknowledged that he had received and read IKONs employee handbook and was familiar with the procedure contained in the handbook for reporting harassment in employment on the basis of religion. (Massie Tr. p. 88). He maintains he did not do so because he did not feel that the issue was important at the time (Plaintiff's Memorandum of Law at p. 9). Subsequently, when he told other employees that he was thinking of filing a complaint, he was told that it might be considered a personal attack on Watkins, and he could be terminated as a result.

■ Plaintiff's fear of being terminated is not an adverse employment action because of its lack of consequence. In *Mat-*

*tern v. Eastman Kodak,* 104 F.3d 702 (5th Cir.), *cert. denied,* 522 U.S. 932, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997), the court stated that the verbal threat of being fired is not an "ultimate employment" and does not "rise above mere tangential effect on a possible future employment decision." *Id.* at 708. The Fifth Circuit reasoned that "[t]o hold otherwise would be to expand the definition of 'adverse employment action' to include events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee—anything which might jeopardize employment in the future." *Id...* This court agrees with the Fifth Circuit that based on the language found in Title VII and the ADEA, such expansion is unwarranted. See also *Cole v. Ruidoso Municipal Schools,* 43 F.3d 1373, 1381 (10th Cir.1994)(finding no adverse employment action where principal only stated that he would evaluate the plaintiff three times a year but did not carry the "threat" out).

Plaintiff also made no references to religious discrimination in his September 2, 2000, letter to his then attorney, Angelo Rinaldi, Jr., describing the situation at IKON to see if he had grounds for a lawsuit against IKON or John Watkins. While the letter went into some detail concerning John Watkins' abrasive, autocratic, hypercritical, my way or the highway management style, it makes no mention of Watkins' proselytizing. (Pltf's Memorandum of Law Ex. 35). Furthermore, in his Exit Interview Questionnaire, wherein plaintiff states in writing, that he "detailed his complaints," he again complains about Watkins' autocratic management style, but makes no reference to religious proselytization. (Pltf's Memorandum of Law p. 19).

When asked during his deposition what was his religious faith, plaintiff replied that because he had "walked the paths of many religions," he didn't subscribe to attending church or organized religions, but didn't know "if you can put a label on that." He did state that he was not an atheist, and did have certain beliefs. (Pltf. Tr. pp 202–203).

■ Title VII's capacious definition of "religion" includes "all aspects of religious observance and practice, as well as belief...." 42 U.S.C. S 2000e(j); see also 29 C.F.R. S 1605.1 ("[R]eligious practices ... include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views."). Religious beliefs protected by Title VII need not be "acceptable, logical, consistent, or comprehensible to others...." *Thomas v. Review Board of Indiana Employment Security Division,* 450 U.S. 707, 714, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981). The statute thus leaves little room for a party to challenge the religious nature of an employee's professed beliefs.

■ Yet, "[w]hile the 'truth' of a belief is not open to question, there remains the significant question of whether it is 'truly held.' " *United States v. Seeger,* 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). The element of sincerity is fundamental, since "if the religious beliefs that apparently prompted a request are not sincerely held, there has been no showing of a religious observance or practice that conflicts with an employment requirement." *EEOC v. Ilona of Hungary, Inc.,* 108 F.3d 1569, 1575 (7th Cir.1997).

Even assuming an issue of fact exists with respect to the first element, plaintiff fails on the second element of a prima facie case of Title VII religious discrimination. To satisfy the second element, a plaintiff must properly notify the employer of the plaintiff's conflicting religious belief. *Philbrook v. Ansonia Board of Education,* 757 F.2d 476, 481 (2d Cir.1985). *Chalmers v.*

*Tulon Company of Richmond,* 101 F.3d 1012, 1020 (4th Cir.1996) ("[G]iving notice to co-workers at the same time as an employee violates employment requirements is insufficient to provide adequate notice to the employer and to shield the employee's conduct"); *Johnson v. Angelica Uniform Group, Inc.,* 762 F.2d 671, 673 (8th Cir.1985) ("Had [plaintiff] informed [her employer] of her need for religious accommodation ... [in advance], her employer would have had the chance to explain the ... policy in relation to [her] religious needs, and perhaps work out an arrangement satisfactory to both parties."); *Hussein v. Hotel Employees and Restaurant Local 6,* 108 F.Supp.2d 360, 369 (S.D.N.Y.2000).

It is undisputed that plaintiff did not report to IKON the purported conflict between his religion and what he alleges was the proselytization of John Watkins. By not doing so, he did not give IKON sufficient notice to permit it to work out a satisfactory arrangement with him. Therefore, plaintiff failed to satisfy the notice element of a prima facie case.

Accordingly, defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, is **GRANTED**, and the Amended Complaint is **DISMISSED.**

**IT IS SO ORDERED**